[Cite as *State v. Clay*, 2025-Ohio-4905.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

AUDRIC D. CLAY,

    DEFENDANT-APPELLANT.

CASE NO. 8-25-01

OPINION AND
JUDGMENT ENTRY

Appeal from Logan County Common Pleas Court
General Division
Trial Court No. CR 24 01 0010

**Judgment Affirmed**

**Date of Decision: October 27, 2025**

APPEARANCES:

    *Brian A. Smith* for Appellant

    *Eric C. Stewart* for Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Audric Clay ("Clay"), appeals the December 17, 2024 judgment of sentence entered against him in the Logan County Court of Common Pleas. For the reasons set forth below, we affirm.

*Procedural History*

{¶2} This case originated on January 9, 2024, when a Logan County grand jury returned a nine-count indictment against Clay, charging him as follows: Count 1 – Trafficking in Cocaine, a fourth-degree felony in violation of R.C. 2925.03(A)(1) and (C)(4)(c); Count 2 – Trafficking in Cocaine, a fourth-degree felony in violation of R.C. 2925.03(A)(1) and (C)(4)(c); Count 3 – Trafficking in Cocaine, a third-degree felony in violation of R.C. 2925.03(A)(1) and (C)(4)(d); Count 4 – Trafficking in Cocaine, a fifth-degree felony in violation of R.C. 2925.03(A)(1) and (C)(4)(a); Count 5 – Failure to Comply with an Order or Signal of a Police Officer, a third-degree felony in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), with a vehicle forfeiture specification; Count 6 – Possession of Cocaine, a first-degree felony in violation of R.C. 2925.11(A) and (C)(4)(e); Count 7 – Possession of a Fentanyl-Related Compound, a second-degree felony in violation of R.C. 2925.11(A) and (C)(11)(d); Count 8 – Having Weapons While Under Disability, a third-degree felony in violation of R.C. 2923.13(A)(3), with a firearm specification pursuant to R.C. 2941.141(A) and a firearm forfeiture

specification; and Count 9 – Tampering with Evidence, a third-degree felony in violation of R.C. 2921.12(A).

{¶3} On August 23, 2024, an arraignment was held and Clay entered a plea of not guilty to all counts in the indictment.

{¶4} On October 31, 2024, the case was resolved with a negotiated plea. At that time, Clay pled guilty to Count 4, Count 6, and an amended version of Count 8, which had been amended by stipulation of the parties from the charge of Having Weapons While Under Disability, a third-degree felony in violation of R.C. 2923.13(A)(3), to one of Carrying Concealed Weapons, a fourth-degree felony in violation of R.C. 2923.12(A)(2) and (F)(1). In exchange for Clay's guilty pleas as outlined, the prosecution dismissed the remaining counts of the indictment, as well as the firearm and forfeiture specifications in Count 8. The trial court accepted Clay's negotiated plea of guilty and ordered a presentence investigation.

{¶5} On December 17, 2024, a sentencing hearing was held. Clay was sentenced to a prison term of 12 months on Count 4, an indefinite prison term of 11 years to a potential 16 and 1/2 years on Count 6, and a prison term of 18 months on Count 8. The trial court ordered that the prison terms imposed on Count 6 and Count 8 be served consecutively to each other but concurrently with Count 4.

{¶6} On January 2, 2025, Clay filed the instant appeal, in which he raises two assignments of error for our review.

**First Assignment of Error**

**Because the record does not support the trial court's findings pursuant to R.C. 2929.14(C)(4), the trial court's imposition of consecutive sentences was not supported by the record.**

**Second Assignment of Error**

**Because the trial court did not conduct a sentencing hearing with regard to Appellant's sentence on Count Eight as amended, Carrying a Concealed Weapon, and instead sentenced Appellant on "Attempted Having Weapons Under Disability, which was incorrectly named and to which Appellant did not plead guilty, the trial court violated Appellant's right to a sentencing hearing under R.C. 2929.19 and Appellant's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.**

*Factual Background*

{¶7} With regard to the three crimes to which Clay pled guilty and was sentenced upon, the presentence investigation sets forth the following facts:

On 7-10-2023 investigators made a controlled purchase of cocaine from Audric Clay. A confidential informant made a recorded telephone call to Clay and arranged to purchase $50 worth of cocaine.

The confidential informant was outfitted with recording equipment and provided money by investigators to purchase the cocaine. The CI made the transaction and turned the drugs and recording equipment over to investigators.

Investigators submitted the drugs for testing and results confirmed the substance to be cocaine that weighed .66 grams.

* * *

On 10-19-2023 investigators learned Clay was traveling from Columbus to Bellefontaine. They had an active warrant for his arrest and waited on him to return. Investigators observed Clay driving on US RT 33 near CR 10. As Clay exited onto CR 10 Deputy Sheeley

attempted to initiate a traffic stop and activated his emergency lights and siren. Clay sped off at a high rate of speed and passed numerous vehicles to avoid the deputy. Clay failed to yield at multiple traffic control devices and traveled at a high rate of speed through residential areas. Clay nearly struck another vehicle head on as he attempted to pass in a no passing zone. As Clay's vehicle veered back into the westbound lane of travel, it lost control and traveled off the northside of the road and came to a rest in a cornfield. Clay then fled on foot, evading officers.

Officers recovered a backpack Clay had thrown from his vehicle on West Chillicothe Avenue. Inside the bag was a large amount of suspected crack cocaine and suspected fentanyl. Investigators later submitted the substances for testing and learned the items tested positive for cocaine weighing 97.68 grams and xylazine/fentanyl weighting 13.98 grams. DNA found on the bag opening was found to be consistent with Clay.

Officers also recovered a 9mm Taurus handgun that Clay had thrown from his vehicle on West Columbus Avenue.

Officers searched Clay's vehicle and located a substantial amount of marijuana, a box of 9mm rounds and firearm lockbox. Inside the lockbox was a loaded 9mm Helwan. A spare Taurus magazine belonging to the weapon found on West Columbus Avenue was also found in the vehicle. A shoe was found in the back seat of the vehicle [*sic*] it was found to have a wallet with several cards that had Clay's name on them inside.

*Analysis of Assignments of Error*

*First Assignment of Error*

{¶8} In the first assignment of error, Clay argues that the imposition of consecutive sentences on Counts 6 and 8 was not supported by the record in this case.

{¶9} The standard of review applicable to this sentence-related claim is whether the sentence is clearly and convincingly contrary to law. *State v. Marcum*, 2016-Ohio-1002; R.C. 2953.08. With regard to sentencing-review generally, the Supreme Court of Ohio has limited that review by holding that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones,* 2020-Ohio-6729, ¶ 39. Additionally, a trial court has full discretion to impose any sentence within the statutory range. *State v. Johnson*, 2021-Ohio-1768, ¶ 9 (3d Dist). "A sentence imposed within the statutory range is not contrary to law as long as the trial court considered the purposes and principles of felony sentencing contained in R.C. 2929.11 and the sentencing factors contained in R.C. 2929.12. *Id*., citing *State v. Dorsey*, 2021-Ohio-76, ¶ 15 (2d Dist.).

{¶10} In order to impose consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 2014-Ohio-3177, syllabus.

R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not

disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶11}** When reviewing consecutive sentences on appeal, "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5.

**{¶12}** In the instant case, both on the record at the sentencing hearing and in the judgment entry of sentencing, the trial court made findings pursuant to R.C. 2929.14(C)(4), as well as under subsections (b) and (c) of that statutory section, in support of the consecutive sentences, and Clay does not contest that fact on appeal. Additionally, upon reviewing the entire record before us, we cannot clearly and

convincingly find that the record does not support the trial court's findings with regard to consecutive sentences.

{¶13} The record is replete with factors that support the consecutive sentences imposed by the trial court, and the findings made by the trial court when imposing those sentences. Specifically, in support of the trial court's findings that consecutive sentences are necessary to protect the public from future crime and to punish the offender, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and that Clay's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender, the record reflects that Clay has a decades-long history of criminal adjudications and convictions, for both misdemeanor and felony crimes.

{¶14} As a juvenile in 2000, Clay was adjudicated delinquent for committing Disorderly Conduct after challenging another student to a fight while on a moving school bus, and for damaging the bus, and in 2002, while still a juvenile, Clay was adjudicated delinquent for Assault after he punched and kicked a teacher.

{¶15} As an adult, from 2005 through 2021, Clay was convicted of numerous felony-level crimes in at least nine separate cases, including Receiving Stolen Property, Robbery, Attempted Failure to Appear, Having Weapons While Under Disability, three counts of Trafficking in Cocaine, Attempted Escape, Tampering

with Evidence, and multiple counts of Possession of Drugs. As an adult, Clay also had three misdemeanor convictions, all offenses of violence.

{¶16} Clay also has not responded favorably to sanctions previously imposed, having violated probation as a juvenile and, as an adult, having been terminated unsuccessfully from a community-based correctional facility, having served multiple prison sentences, and having violated the terms of both post-release control and transitional control that had been imposed following his prison terms. The presentence investigation reflects that Clay had an ORAS score of 24 at the time of his sentencing, which indicates a high risk of reoffending. Those facts relating to Clay's history of criminal conduct and lack of rehabilitation, when considered in conjunction with the circumstances of the offenses committed in this case, fully support the findings made by the trial court in support of consecutive sentences. In sum, when considering the record as a whole, Clay has not demonstrated by clear and convincing evidence that his consecutive sentences are contrary to law.

{¶17} The first assignment of error is overruled.

*Second Assignment of Error*

{¶18} In the second assignment of error, Clay asserts that his sentence must be reversed because he was denied his right to a sentencing hearing as to Count 8.

{¶19} In this regard, as previously noted, Count 8 of the original indictment charged Clay with Having Weapons While Under Disability, a third-degree felony

in violation of R.C. 2923.13(A)(3). When the case was resolved with a negotiated plea of guilty on October 31, 2024, in addition to pleading guilty to Counts 4 and 6 as originally indicted, Clay pled guilty to Count 8 as amended by agreement of the parties to a charge of Carrying Concealed Weapons, a fourth-degree felony in violation of R.C. 2923.12(A)(2) and (F)(1). However, during the sentencing hearing on December 17, 2024, the record reflects that the trial court erroneously referred to amended Count 8 as being a charge of Attempted Having Weapons While Under Disability. Clay argues on appeal that this misnomer by the trial court resulted in the failure to conduct a sentencing hearing on the charge of Carrying Concealed Weapons, therefore depriving him of his right to due process as guaranteed by the United States and Ohio Constitutions, and resulting in the trial court giving improper weight to Clay's prior record, particularly his firearm disability.

{¶20} In analyzing this claim for reversible error, we first note that the record of the October 31, 2024 change of plea hearing supports the conclusion that the trial court was fully aware of the crime to which Clay actually pled guilty in Count 8 as amended, being Carrying Concealed Weapons, as well as being aware of the elements thereof. Prior to accepting the negotiated guilty plea, the trial court noted as to Count 8:

> That is the count that is being amended to possess – carrying a concealed weapon. It allegedly occurred here on 19th of October, 2023 in Logan County. Carrying a concealed weapon is a pretty self-

explanatory charge. It means that you had a firearm on you that worked and was, you know, usable – it wasn't a toy or a broken gun or anything like that – and you had concealed it. In other words, it wasn't, you know, visible or out in the open or anything like that.

(10/31/24 Tr., 9-10).

**{¶21}** Secondly, the presentence investigation clearly and accurately sets forth the fact that Clay pled guilty in Count 8 to the crime of Carrying Concealed Weapons, a felony of the fourth degree. At the sentencing hearing, just prior to imposing sentence, the trial court stated:

The Court will then proceed to sentencing. In doing so, I note that I have reviewed and analyzed the presentence investigation report in this case and incorporate the facts and information contained in the PSI report by reference as part of the basis for this sentence.

(12/17/24 Tr., 9).

**{¶22}** We also note that Carrying Concealed Weapons in violation of R.C. 2923.12(A)(2), the crime to which Clay pled guilty in Count 8, and Attempted Having Weapons While Under Disability, the name of the crime referenced by the trial court at sentencing, are both felonies of the fourth degree. See R.C. 2923.12(F)(1); R.C. 2923.02(E)(1); R.C. 2923.13(B).

**{¶23}** In light of the above facts, and because Clay was originally charged with Weapons Under Disability in Count 8, prior to the amendment of that count at the time of his guilty plea, we conclude that the trial court's misstatement of the crime's name at the sentencing hearing was merely a slip of the tongue. Additionally, regardless of the trial court's misnomer at sentencing of the crime at

-11-

issue in Count 8, as amended, the record is clear that Clay was sentenced for a fourth-degree felony on Count 8, with a sentence imposed from within the permissible statutory range for the offense to which he pled guilty.

{¶24} More importantly, the trial court's judgment entry of sentencing, filed on December 17, 2024, reflects that Clay was sentenced on Count 8 for the charge of Carrying a Concealed Weapon, a fourth-degree felony in violation of R.C. 2923.12(A)(2) and (F)(1). As this Court stated in *State v. Eitzman*, 2022-Ohio-574 (3d Dist.):

> [T]he axiomatic rule is that a court speaks through its journal entries." *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 12. "Accordingly, it is the trial court's judgment entry and not the oral pronouncement of a sentence at a sentencing hearing (or a resentencing hearing) that is 'the effective instrument for sentencing a defendant.'" *State v. Roscoe*, 8th Dist. Cuyahoga No. 102191, 2015-Ohio-3876, ¶ 7, quoting *State v. Rodriguez-Baron*, 7th Dist. Mahoning No. 10-MA-176, 2012-Ohio-1473, ¶ 13. *See State v. Brown*, 3d Dist. Allen No. 1-06-66, 2007-Ohio-1761, ¶ 3 ("A trial court speaks only through its journal entries and not by oral pronouncement.").
>
> "[I]f the journal entry and the judge's comments conflict, the journal entry controls." *State v. Potter*, 6th Dist. Fulton No. F-21-002, 2021-Ohio-3502, ¶ 13, quoting *State v. Hankins*, 89 Ohio App.3d 567, 569, 626 N.E.2d 965 (3d Dist. 1993). *See also State v. Swiergosz*, 197 Ohio App.3d 40, 2012-Ohio-830, 965 N.E.2d 1070, ¶ 49 (6th Dist.) (concluding that "verbal miscues or misstatements in open court during sentencing are harmless").

*Id*, at ¶¶ 30-31.

{¶25} Finally, contrary to Clay's argument on appeal, the record of the sentencing hearing does not reflect that the trial court gave improper weight to

Clay's prior record, particularly his firearm disability, as a result of misstating the name of the crime in Count 8. There is no indication that the trial court considered the actual elements of Attempted Having a Weapon While under Disability, and specifically the fact that Clay was under disability, in formulating the sentence that was ordered on Count 8, as opposed to merely considering – and accurately so – the fact that Clay was being sentenced on Count 8 for a felony of the fourth degree. Moreover, as Clay has a multitude of prior felony convictions, of which the trial court was aware from the presentence investigation, and which were relevant to sentencing generally, Clay fails to establish how prejudice resulted from his speculative assertion that a legal disability relating to firearms was erroneously considered by the trial court in sentencing Clay on Count 8. Put another way, to the extent that being under disability may conceivably be an aggravating factor as to sentence, not that there is any indication that the trial court here considered the same as such, Clay was in fact under disability as a result of at least a half-dozen of his prior felony convictions.

{¶26} In sum, this Court finds that all of the facts and circumstances referenced above support the conclusion that, in imposing sentence in this case, the trial court properly considered the crime to which Clay pled guilty in Count 8, and the facts relating to that crime, as opposed to erroneously sentencing Clay for wrong crime or considering aggravating factors not properly before the court at the time of sentencing. Accordingly, for all the reasons stated, this Court finds that,

notwithstanding the trial court's incorrect recitation of the name of the crime at issue, Clay was properly sentenced for the felony of the fourth degree to which he pled guilty in Count 8.

{¶27} The second assignment of error is overruled.

*Conclusion*

{¶28} Having found no error prejudicial to the defendant-appellant, Audric Clay, in the particulars assigned and argued, the judgment of sentence entered against him in the Logan County Court of Common Pleas is affirmed.

***Judgment affirmed***

**ZIMMERMAN, J., concurs.**

**WILLAMOWSKI, J., dissents.**

{¶29} I respectfully dissent from the majority opinion as to the second assignment of error. No one disputes that the trial court misspoke at the sentencing hearing. A review of the record shows that at no point in time during that hearing did the trial court correctly identify the charge for which Clay was convicted. Instead the trial court repeatedly indicated that Clay had been convicted of attempted having weapons under a disability rather than the correct charge. Pursuant to the statements made at the sentencing hearing, Clay was sentenced for a conviction that never occurred.[1]

---

[1] A review of the transcript also shows that the trial court also incorrectly stated that Clay had been convicted on count three at the beginning of the hearing. The trial court corrected this later to indicate that Clay was convicted on count four. Then when imposing the sentence on count four, the trial court stated "[o]n Count

{¶30} Crim.R. 43(A)(1) provides that a defendant has the right to be physically present at every stage of the criminal proceedings and trial, including the imposition of sentence. This includes any modification of a sentence announced at the hearing. *State v. Patrick*, 2013-Ohio-3821 (4th Dist.). "A defendant thus has a due-process right, embodied in Crim.R. 43(A), to be present when the court imposes sentence, and a trial court cannot abrogate a defendant's due-process rights by sentencing the defendant in his absence." *State v. Railey*, 2012-Ohio-4233, ¶ 20 (1st Dist.). "A trial court cannot impose a sentence in the sentencing entry that differs from what it imposed at the sentencing hearing." *State v. Sanbridge*, 2020-Ohio-1629, ¶ 6 (8th Dist.).

{¶31} Under the facts of this case, no sentence was imposed for the conviction of carrying a concealed weapon at the sentencing hearing because the trial court stated the wrong offense throughout the entire hearing. Although the journal entry of sentence corrected the error, it does not change the fact that by not allowing the defendant to be present when he was sentenced for the charge for which he was actually convicted, he is denied his due process right to be present when correctly sentenced. For this reason, I would sustain the second assignment of error and remand the matter for resentencing. Having found error in the second assignment of error, the first would become moot and I would not rule on it.

---

Four, trafficking in cocaine, a felony of the fifth degree, the defendant is sentenced to a nonmandatory 12-month prison term to be served concurrently with Count Four."

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

_____
Juergen A. Waldick, Judge


_____
William R. Zimmerman, Judge


DISSENTS_____
John R. Willamowski, Judge

DATED:
/jlm